UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUGGERS, INC. | ) |
| d/b/a KOOGA NORTH AMERICA, | ) |
|        Plaintiff, | ) |
| | ) |
|       v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| RUGBY FOOTBALL UNION, LTD. | )   C.A. NO. 09-cv-30051-MAP |
| d/b/a USA RUGBY, | ) |
| CANTERBURY OF NEW ZEALAND- | ) |
| UNITED STATES, | ) |
| UNDER ARMOUR, INC., CROSSBAR | ) |
| ATHLETIC WEAR, | ) |
| RUGBY IMPORTS, LTD, | ) |
| AND XP APPAREL, LLC, | ) |
|        Defendants | ) |

MEMORANDUM AND ORDER REGARDING
DEFENDANT UNDER ARMOUR INC.'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
(Dkt. No. 41.)

September 10, 2010

PONSOR, D.J.

I. INTRODUCTION

On March 30, 2009, Plaintiff Ruggers, Inc. d/b/a KooGa North America ("Plaintiff"), a vendor of rugby clothing and gear, filed suit against United States of America Rugby Football Union, LTD, d/b/a USA Rugby ("USA Rugby"), alleging that USA Rugby willfully violated the terms of an exclusive sponsorship agreement between the parties. (Dkt. No. 1.) On August 4, 2009, Plaintiff amended its complaint to add claims against a number of Plaintiff's competitors. (Dkt. No. 22.) The complaint, as amended, alleges that

Plaintiff's competitors induced USA Rugby to violate the terms of its agreement with Plaintiff, that they unjustly benefitted from the breach, and that they otherwise misappropriated benefits owed Plaintiff under the agreement. Based on these allegations, Plaintiff asserts seven claims against all of the competitor-Defendants: violation of Mass. Gen. Laws. ch. 93A (Count III); false advertising under the Lanham Act, 15 U.S.C. § 1125(a) (Count IV); trademark infringement under the Lanham Act; 15 U.S.C. § 1114(a) (Count V); unjust enrichment (Count VI); intentional interference with contract (Count VII); misappropriation of common law right to publicity (Count VIII); and invasion of privacy under Mass. Gen. Laws 214 § 3A (Count IX).

One of the competitor-Defendants, Under Armour, Inc. ("Under Armour"), has moved pursuant to Fed. R. Civ. P. 12(b)(6), 12(d) to dismiss or, in the alternative, for summary judgment as to all claims against it.  (Dkt. No. 41.)  Following extensive briefing from both parties, the court held oral argument on the motion on March 5, 2010. For the reasons summarized below, Defendant's motion will be allowed.

## II. <u>BACKGROUND</u>

In May 2004, Plaintiff entered into an agreement with USA Rugby ("the Sponsorship Agreement") whereby Plaintiff

2

agreed to provide USA Rugby-sanctioned teams with $350,000 worth of rugby clothing and gear annually in exchange for the exclusive rights to use the USA Rugby trademark on its clothing and to have USA Rugby-sanctioned teams wear, use, and promote only Plaintiff's clothing and gear.  (Dkt. No. 22, Second Amended Complaint (hereinafter "Compl.") at ¶¶ 15, 17.)  Although the terms of the parties' agreement were contemporaneously reduced to a writing, the contract remained unsigned until June of 2007, at which time it was executed, and governed the parties' relationship from June 2007 through May 2008.  (Compl. at ¶¶ 15, 16.)  Plaintiff avers that, notwithstanding the lack of a signed instrument, USA Rugby acknowledged the parties agreement at all relevant times, and that from May 2004 until mid-2006 USA Rugby substantially complied with the terms of the agreement. (Compl. at ¶¶ 15, 19.)

Beginning in mid-2006 and continuing through the term of the Sponsorship Agreement, however, USA Rugby is alleged to have authorized a number of Plaintiff's competitors (including Under Armour) to use the USA Rugby logo in association with their products, allowed USA Rugby teams to wear and promote Plaintiff's competitors' clothes, and engaged in the sale and promotion of Plaintiff's

competitors' brands through its USA Rugby website. (Compl. at ¶ 21.)

Plaintiff alleges that Under Armour (along with other competitors) "sought and induced USA Rugby to break the Sponsorship Agreement while knowing of its existence or intentionally used USA Rugby's marks while knowing that they were not authorized to do so or that [Plaintiff] had the exclusive right to do so" and that "[e]ach Competing Defendant who touted USA Rugby sponsorship did so knowing of [Plaintiff's] pre-existing exclusive sponsorship rights." (Compl. at ¶ 23.)

### III. <u>DISCUSSION</u>

A. <u>Standard of Review</u>.

Under Armour has cast its motion as a motion to dismiss or, in the alternative, a motion for summary judgment. Federal Rule 12(d) provides that if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Here, both parties have submitted materials beyond the complaint. Filing additional materials outside the pleadings, however, does not automatically convert the motion into one for summary judgment. Rather, a reviewing court may still choose to ignore the supplementary materials and determine the motion

4

under the Rule 12(b)(6) standard.  <u>Garita Hotel Ltd. P'ship
v. Ponce Fed. Bank, F.S.B.</u>, 958 F.2d 15, 18-19 (1st Cir.
1992) (citing cases).  This is the course the court has
chosen to follow here.

To survive a motion to dismiss under Rule 12(b)(6), a
complaint must contain sufficient factual matter to state a
claim for relief that is both actionable as a matter of law
and "'plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 129 S.
Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v.
Twombly</u>, 550 U.S. 544, 570 (2007)).  When assessing a
complaint's sufficiency, a court must accept all well-
pleaded facts as true and draw all reasonable inferences in
favor of a plaintiff.  <u>Edes v. Verizon Communs.</u>, 417 F.3d
133, 137 (1st Cir. 2005); Fed. R. Civ. P. 12(b)(6).

This "highly deferential" standard of review "does not
mean, however, that a court must (or should) accept every
allegation made by the complainant, no matter how conclusory
or generalized."  <u>United States v. AVX Corp.</u>, 962 F.2d 108,
115 (1st Cir. 1992).  Accord <u>Sanchez v. Pereira-Castillo</u>,
590 F.3d 31, 49 (1st Cir. 2009) (citing <u>Iqbal</u>, 129 S. Ct. at
1950) (noting that pleadings that are no more than
conclusions "are not entitled to the assumption of truth").
Ultimately, a complaint must "set forth 'factual
allegations, either direct or inferential, respecting each

material element necessary to sustain recovery under some actionable legal theory.'" Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

B. Application.

1. Lanham Act Claims (Counts IV & V).

In Counts IV and V respectively, Plaintiff alleges that Under Armour: (1) engaged in false sponsorship by using USA Rugby's registered and unregistered trademarks "in such a way as to intentionally indicate falsely the sponsorship of the goods or sponsorship of [] USA Rugby"; and (2) infringed USA Rugby's registered trademarks by using them "in such a way as to confuse consumers . . . ." (Compl. ¶¶ 44, 51.) For each of these claims to survive, Plaintiff must set forth facts demonstrating that Under Armour, in fact, "used" a USA Rugby trademark. DeCosta v. Viacom Int'l, Inc., 981 F.2d 602, 605 (1st Cir. 1992) ("[t]rademark law seeks to prevent one seller from using the same "mark" as -- or one similar to -- that used by another in such a way that he confuses the public . . . ." (emphasis added)); Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 60 (1st Cir. 2008) (identifying "use," i.e. that the defendant is using that same or a similar mark, as an essential element of a

6

trademark claim).  See also Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 35 (1st Cir. 1989) (noting, in the false sponsorship context, that a rebuttable presumption of confusion arises where a defendant uses a registered trademark with the intent to suggest the markholder's official imprimatur).

Here, the allegations contained in the complaint are insufficient to demonstrate, either directly or inferentially, that Under Armour has, in fact, "used" the USA Rugby trademark.  Plaintiff's Lanham Act claims rest entirely on the vague and conclusory allegation that "all" of the named competitor-defendants used USA Rugby trademarks.  However, threadbare recitals of the legal elements, supported by mere conclusory statements do not suffice to state a cause of action.  Chiang v. Skeirik, 582 F.3d 238, 244 (1st Cir. 2009).  At a minimum, a plaintiff must set forth facts "as to who did what to whom, when, where, and why . . . ."  Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004).  The complaint contains no allegation (nor has Plaintiff at any point asserted) that Under Armour, for example, either sold or produced any item bearing the USA Rugby mark or that it attempted to exploit the mark in any of its solicitation materials.  In short, Plaintiff's broad undifferentiated

allegations provide an insufficient basis to support its claims against Under Armour.[1]

In an effort to preserve its causes of action, Plaintiff has proposed that it be given the opportunity to further amend its complaint should it be deemed "somehow insufficient". (Dkt. No. 60, Pl.'s Sur-reply in Opp. to Def.'s Mot. to Dismiss, 4 & n.2.) In the context of its opposition to Plaintiff's motion summary judgment, Plaintiff has made additional factual allegations bearing on the "use" element of its trademark claims. Having considered these supplementary allegations, the court concludes that Plaintiff's proposed amendment would be futile. <u>Glassman v. Computervision Corp.</u>, 90 F.3d 617, 623 (1st Cir. 1996).

Plaintiff alleges that on at least three occasions in 2007, representatives of USA Rugby, including members of the national team, wore Under Armour apparel "in close physical relation to the USA Rugby marks on <u>other</u> garments" during public appearances. (Dkt. No. 55, Pl.'s Memo. In Opp. at 17.)(Emphasis supplied). According to Plaintiff, these

---

[1] Indeed, the allegations against Under Armour are likely insufficient to meet the burdens imposed by Rule 8(a)(2) even under notice pleading standard. <u>See</u> <u>Educadores Puertorrique Nos En Acci On v. Hernandez</u>, 367 F.3d 61, 68 (1st Cir. 2004) (quoting <u>Chongris v. Board of Appeals of Town of Andover</u>, 811 F.2d 36, 37 (1st Cir. 1987)) (directing courts, well before <u>Twombly</u> and <u>Iqbal</u>, to "eschew any reliance on bald assertions . . ." when determining motions under Rules 12(b)(6)).

additional facts demonstrate that Under Armour "used" USA
Rugby marks based on a theory that a USA Rugby
representative's choice to wear an Under Armour-branded
undershirt in conjunction with their USA Rugby-branded
uniforms constitutes "use" of USA Rugby marks by Under
Armour.

Plaintiff's argument is unpersuasive.  There is no
support, either in the case law Plaintiff cites or in
regular English, for Plaintiff's theory of use.  Random
House defines "use" as "the act of employing, using, or
putting into service."  Random House Dictionary of the
English Language, 2097 (2d ed. 1987).  Indeed, in ordinary
English the word "use" necessarily connotes some action by
the user in relation to the object used.  See Watson v.
United States, 552 U.S. 74, 83 (2007) (holding that a person
does not "use" a firearm when he receives it in trade for
drugs).  Consonant with this notion, Plaintiff's new factual
allegations demonstrate, at most, that USA Rugby may have
used its own mark in a manner which had the potential to
confuse the public.  Although this may have inured to the
benefit of Under Armour, Plaintiff has provided no authority
for the proposition that the passive receipt of such a
benefit is tantamount to "use" by Under Armour in this

9

context.[2]  Therefore, Plaintiff's new allegations, accepted
as true, fail to demonstrate that Under Armour "used" a USA
Rugby trademark.  Counts IV and V will be dismissed.

2. Chapter 93A claim (Count III).

    Plaintiff's failure to adequately demonstrate use of a
USA Rugby mark by Under Armour is also fatal to its claim
under Chapter 93A.  In Count III, Plaintiff alleges that
"each of the Defendants" has engaged in unfair or deceptive
acts or practices in violation of Mass. Gen. Laws ch. 93A,
§§ 2 and 9.[3]  Plaintiff concedes that use of a USA Rugby

_____

    [2] The case relied upon by Plaintiff to support its
theory of use neither supports nor compels a different
result.  In National Football League Properties, Inc. v.
Dallas Cowboys Football Club, Ltd., 922 F. Supp. 849
(S.D.N.Y. 1996), the exclusive licensee of the Dallas
Cowboys' trademarks sued the Cowboys for false sponsorship
under the Lanham Act.  Based in part on allegations the
defendant-licensor Cowboys had posed in pictures at a press
conference dressed in a shirt bearing a Cowboys Club
trademark in conjunction with boots sporting a Pepsi logo,
the NFL Properties court found that the plaintiff had
sufficiently demonstrated that the Cowboys had used its
marks in a manner likely to cause the public confusion as to
sponsorship.  Id. at 855.  Assuming arguendo that NFL
Properties and the instant case are not distinguishable on
their facts, Plaintiff's proposed analogy fails at an
essential point.  Pepsi, who like Under Armour here was the
alleged "third party beneficiary" of the Cowboys misuse of
their own mark, was not a defendant in NFL Properties.
Therefore, that case does not support the proposition that
colorable claims against Under Armour lie here.

    [3] The court treats Plaintiff's claim as if it were
raised under section 11 of Chapter 93A.  Plaintiff, an
entity engaged in trade or commerce, is ineligible for
relief under section 9.  Blue Cross & Blue Shield v.
AstraZeneca Pharms. LP (In re Pharm. Indus. Average

mark in a way likely to cause confusion among customers is an essential element of its unfair competition claim.  (Dkt. 55 Pl.'s Opp. at 12.)  Cf. R.J. Toomey Co. v. Toomey, 683 F. Supp. 873, 879 (D. Mass. 1988).  Concordant with the previous discussion on use, therefore, Count III will be dismissed for failure to state a claim.

3. Unjust Enrichment (Count VI).

        In Count VI, Plaintiff alleges that by continuing to engage in sponsorship activities and conveying the impression that it was a sponsor of USA Rugby, Under Armour was unjustly enriched to Plaintiff's detriment.  With Count IV, Plaintiff merely seeks to reassert its Lanham Act and Chapter 93A claims as an equitable claim.  In Massachusetts, the equitable remedy of unjust enrichment is not available to parties with an adequate remedy at law.  Santagate v. Tower, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005); Infusaid Corp. v. Intermedics Infusaid, Inc., 739 F.2d 661, 668 (1st Cir. 1984) ("if there is an adequate remedy at law, equitable relief is unavailable").  To the degree that Count VI alleges actionable conduct, it is fully remediable through Plaintiff's trademark and chapter 93A claims

---

Wholesale Price Litig.), 582 F.3d 156, 191 (1st Cir. 2009); Continental Ins. Co. v. Bahnan, 216 F.3d 150, 156 (1st Cir. 2000) ("section 9 affords no relief to persons engaged in trade or commerce").

asserted in Counts III, IV and V of the complaint.
Accordingly, Count VI will be dismissed.  Kusek v. Family
Circle, 894 F. Supp. 522, 528 (D. Mass. 1995).

4. Right of Publicity Claims (Counts VIII & IX).

In Counts VIII and IX, Plaintiff alleges that Under
Armour (along with all other Defendants) wrongfully
appropriated to itself the right of publicity in USA Rugby's
name and likeness -- a right that was exclusively assigned
to Plaintiff under the terms of the sponsorship agreement.
Plaintiff seeks both statutory and common law remedies for
the alleged misappropriation.

Plaintiff's common law claim (Count IX) may be disposed
of quickly.  Although Massachusetts recognizes a right of
publicity, Bi-Rite Enterprises, Inc. v. Bruce Miner Co., 757
F.2d 440, 444 (1st Cir. 1985), it "does not recognize the
[common law] tort of misappropriation of the right to
publicity." Minovitch v. Battin, 2005 Mass. Super. LEXIS
351 (Mass. Super. Ct. July 15, 2005) (citing Nolan and
Sartorio, Tort Law, Mass. Practice Series, Vol. 37, Sec. 33,
n.1).  Rather, Massachusetts protects against the
appropriation of the commercial value of a person's name and
likeness by statute.  See Tropeano v. Atlantic Monthly Co.,
400 N.E.2d 847, 850 (Mass. 1980); Mass. Gen. Laws ch. 214, §
3A.  Count VIII, therefore, will be dismissed.

12

As to Plaintiff's statutory publicity claim, Under Armour argues that corporations lack standing to sue under Mass. Gen. Laws ch. 214, § 3A.  In support, it cites <u>Warner-Lambert Co. v. Execuquest Corp.</u>, 691 N.E.2d 545 (Mass. 1998), a Supreme Judicial Court decision holding that corporations lack standing to sue for invasion of privacy under Mass. Gen. Laws ch. 214, § 1B because "[a] corporation is not an 'individual' with traits of a 'highly personal or intimate nature.'"  <u>Id</u> at 548.  In an effort to refute this argument, Plaintiff cites <u>Bi-Rite Enterprises, Inc. v. Bruce Miner Co.</u>, 757 F.2d 440 (1st Cir. 1985), a First Circuit case in which two corporate entities -- each a licensee of the publicity rights of a number of individual musicians -- brought claims against a poster manufacturer under Section 3A for distributing posters portraying the performers.  <u>Id.</u> at 441.  Plaintiff argues that "there is nothing in the statute, the <u>Bi-Rite</u> decision, or anywhere else that supports precluding groups, teams, or the entities that run them" from asserting publicity claims.  (Dkt. No. 60 Pl.'s Sur-Reply, 4.)

Unfortunately, the legal authority cited by the parties is not particularly illuminating.  The <u>Warner-Lambert</u> decision, as Under Armour concedes, addressed a separate section of the statute while the <u>Bi-Rite</u> decision did not

13

ultimately reach the scope of section 3A because, applying choice of law principles, it held that the corporate entities' publicity claims were governed by the laws of Illinois and Connecticut not Massachusetts law.  <u>Bi-Rite</u>, 757 F.2d at 446.

It appears that one court in this district has considered the issue of corporate standing under section 3A directly.  In <u>Pump, Inc. v. Collins Management, Inc.</u>, 746 F. Supp. 1159, 1172 (D. Mass. 1990), Judge William Young expressed "grave doubts" as to whether section 3A, which the court noted was designed to apply to the misappropriation of private names and likenesses, is amenable to use by a corporate plaintiff to protect a registered trademark.  <u>Id.</u> Noting that "the Massachusetts legislature ha[d] already provided ample remedies for such wrongs" through Chapter 93A and trademark laws, the court likened application of section 3A in the corporate context to "forc[ing] a square peg in a round hole."  <u>Id</u>.  In the end, however, the <u>Pump, Inc.</u> court determined that it was "[f]ortunately" not required to rule on the issue because the plaintiff had failed to demonstrate a genuine issue of material fact as to the unauthorized use of its name necessary to survive the pending motion for summary judgment.  <u>Id</u>.

14

This court shares Judge Young's dubiousness regarding the application of section 3A in the corporate context, but also concludes that it need not rule on the issue.  The statute provides, in pertinent part, that "[a]ny person whose name, portrait or picture is used within the commonwealth for advertising purposes or for the purposes of trade without his written consent . . . may recover damages for any injuries sustained by reason of such use."  Mass. Gen. Laws. ch. 214 § 3A.  As discussed <u>supra</u>, Plaintiff has failed to adequately allege that Under Armour has, in fact, "used" USA Rugby's mark.  Nor has Plaintiff demonstrated use of USA Rugby's name or likeness by Under Armour. Consequently, Count IX will be dismissed.

5. <u>Intentional Interference with Contract (Count VII)</u>.

In Count VII, Plaintiff alleges that Under Armour intentionally interfered with its contractual relations with Defendant USA Rugby.  To state a claim for intentional interference with contract under Massachusetts law, a complaint must contain enough factual matter to demonstrate that: (1) Plaintiff had a contract with USA Rugby; (2) Under Armour knowingly induced USA Rugby to break that contract; (3) Under Armour's interference, in addition to being intentional, was improper in motive or means; and (4) Plaintiff was harmed by Under Armour's actions.  <u>Platten v.</u>

15

HG Berm. Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006)
(quoting G.S. Enters., Inc. v. Falmouth Marine, Inc., 571
N.E.2d 1363, 1369-70 (1991)).

     Count VII fails because the complaint lacks sufficient
allegations to support the second and third of these
elements.  Other than the bald and undifferentiated
assertion that "each of the Competing Defendants sought and
induced USA Rugby to break the Sponsorship Agreement while
knowing of its existence," the complaint does not contain a
single factual allegation from which this court can conclude
or infer that Under Armour knowingly induced USA Rugby to
breach the Sponsorship Agreement -- let alone that its
actions were improper in motive or means.[4]  Although
Plaintiff's allegations are arguably sufficient to
demonstrate that there was a contract between Plaintiff and
USA Rugby and that Plaintiff was harmed as a result of this
contract being breached, the claim that Under Armour
knowingly induced the breach appears to rest on mere
suspicion alone.  More is required to survive a motion to
dismiss.  Twombly, 550 U.S. at 555 (quoting 5 C. Wright & A.
Miller, Federal Practice and Procedure § 1216, pp 235-236

---

     [4] The court finds it notable that the complaint contains
no allegation that Under Armour continued to supply its
products to USA Rugby, only that USA Rugby representatives
continued to wear them.

16

(3d ed. 2004) ("[f]actual allegations must be enough to raise a right to relief above the speculative level"). Plaintiff's failure to allege even minimal facts regarding the who, what, when, and where on the "knowing inducement" element of its claim deprives Under Armour of fair notice of the grounds of Plaintiff's claim as applied to it. Accord <u>Educadores Puertorriquenos en Accion</u>, 367 F.3d at 66.[5].

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant Under Armour's Motion to Dismiss (Dkt. No. 41) is hereby ALLOWED.  The court will hold off entering judgment in favor of Under Armour until entry of judgment for the entire case is proper or a motion is filed pursuant to Fed. R. Civ. P. 54(b).

The clerk will set this case for a status conference. It is So Ordered.

<u>/s/  Michael A. Ponsor</u>
MICHAEL A. PONSOR

U. S. District Judge

---

[5] Plaintiff argues that dismissal is premature at this juncture because formal discovery has not yet been conducted by the parties.  (Dkt. No. 55, Ex. 1 Aff. of Vic Thomas ¶ 26.) The court disagrees.  "The purpose of pretrial discovery is not to allow a plaintiff to rummage about in search of a hitherto unexplicated cause of action." <u>McCloskey v. Mueller</u>, 446 F.3d 262, 271 (1st Cir. 2006) (citing <u>Bruno & Stillman, Inc. v. Globe Newspaper Co.</u>, 633 F.2d 583, 597 (1st Cir. 1980).