UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUGGERS, INC., d/b/a KOOGA NORTH AMERICA,<br>           Plaintiff<br>           v.<br><br>UNITED STATES OF AMERICA RUGBY FOOTBALL UNION, LTD. d/b/a USA RUGBY, CANTERBURY OF NEW ZEALAND - UNITED STATES, UNDER ARMOUR, INC., CROSSBAR ATHLETIC WEAR, RUGBY IMPORTS LTD, and XP APPAREL, LLC,<br>           Defendants | Civil Action No. 09-30051-MAP |

REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFF'S
DAMAGES vis-a-vis DEFENDANT XP APPAREL, LLC
February 17, 2011

NEIMAN, U.S.M.J.

On December 9, 2010, District Judge Michael A. Ponsor granted Ruggers, Inc. ("Plaintiff")'s motion for default judgment against XP Apparel, LLC ("Defendant") and referred the matter to this court for a hearing on damages. The hearing was held on February 10, 2011, but Defendant did not appear. The court is now poised to recommend, pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b), that damages in the amount of $23 million and attorneys' fees in the amount of $24,600 be awarded Plaintiff.

I. BACKGROUND

In an amended complaint, Plaintiff charged Defendant, together with other entities, with trademark infringement under the Lanham Act 15 U.S.C. § 1114(a). Plaintiff also asserted claims against Defendant for false advertising, unjust enrichment, interference with contract, misappropriation of publicity, and violation of Mass. Gen. L. chapter 93A as well as chapter 214, section 3A. After Defendant's ensuing motion to dismiss for lack of personal jurisdiction was denied, it filed its answer together with a counterclaim against Plaintiff and a cross-claim against one of the other defendants, United States of America Rugby Football Union Ltd. ("USA-Rugby"). Thereafter, in November of 2010, Judge Ponsor granted Defendant's attorneys' motion to withdraw, but denied their request that Defendant be given additional time to provide automatic disclosures, adding that "Plaintiff may move for default, and [Defendant] may retain counsel and oppose if it wishes."[1] As indicated, Plaintiff did indeed request a default judgment, which request was allowed.[2]

## II. DISCUSSION

In seeking to establish damages, Plaintiff relies on Section 35(a) of the Lanham Act which addresses damages, costs, and attorney's fees:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation

---

[1] The court notes that, when seeking to withdraw, Defendant's attorneys informed the court that Defendant did "not object to counsel's withdrawal, as it has ceased operations and can no longer afford to pay its counsel." (Document No. 71.)

[2] During the damages hearing, the court pointed out to Plaintiff that Defendant's counterclaim against Plaintiff and its cross-claim against USA-Rugby remain technically alive. Plaintiff's counsel indicated that he would consider appropriate action to address those technicalities.

> under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. 1117(a). Citing this section, Plaintiff seeks $23 million in damages and $24,600 in attorney's fees.

To arrive at the $23 million damages figure, Plaintiff notes, first, that Section 35(a) entitles a plaintiff to "defendant's profits" which shall be assessed by the plaintiff's proof of the "defendant's sales" and, second, that an aggrieved party may also recover "three times such amount." Here, Plaintiff asserts, by Defendant's own admission, its "net sales" during the period of 2006-2008 were just over $23 million, as reflected in a September 10, 2009 affidavit of William Wall, Defendant's chief executive officer, a copy of which had been attached to Defendant's motion to dismiss. (Document No. 34 ("Def.'s Motion to Dismiss"), Ex. 1.) Although it is not clear how "net sales" was defined

3

by Mr. Wall, the affidavit is the sole piece of evidence upon which Plaintiff relied at the damages hearing. Having defaulted before discovery, Plaintiff asserted, Defendant had effectively prohibited the possibility that Plaintiff could submit any alternative evidence of damages to the court.

To be sure, Mr. Wall's affidavit was intended for a different purpose, namely, Defendant's motion to dismiss for lack of personal jurisdiction. Thus, in large part, the affidavit described the paucity of Defendant's contacts with Massachusetts. (See *id.* ¶¶ 2-9.) Nonetheless, the affidavit avows that, "[f]or the years 2006 through 2008, the total of [Defendant]'s net sales was $23,160,686." (*Id.* ¶ 6.) That being so, Plaintiff argues that its sole burden is to introduce the net sales figure of $23,160,686 as the presumptive amount of its damages. *See* 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."). In turn, Plaintiff acknowledges, Defendant could reduce the amount of damages to be awarded if it carries its burden of proving what portion "of those sales were unrelated to and unaided by [Defendant]'s illicit use of [Plaintiff's exclusively licensed] marks." *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 64 (1st Cir. Mass. 2008). As described, however, Defendant has foregone the opportunity to do so.

Plaintiff also acknowledged during the hearing that the $23 million damages figure is quite large but argued that to suggest any other figure would be speculative at best. The court agrees. As Plaintiff asserts, the damages for which Defendant is liable may include *all* profits on sales made during the time it used the trademark that Plaintiff

had exclusive rights to use. *See* 15 U.S.C. § 1117(a). Thus, as Plaintiff maintains, Defendant's exposure is not necessarily limited to its sales of USA Rugby-marked goods, the trademark at issue, or even to products directly competing with goods Plaintiff sells. *See Venture Tape Corp.* at 63-64 (affirming award based on total profit even where plaintiff claimed sales of goods bearing infringing marks accounted for less than one percent of total sales); *Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 36-38 (1st Cir. 2002) (affirming award of all profits despite defendant's claims that only twenty to thirty percent of its sales directly competed with plaintiff's goods).

In short, the $23 million figure is the only damages estimate available. Indeed, even if the court itself were to believe that this amount might be excessive, it is unable to make a finding to that effect, as authorized by Section 35(a), because of the scant evidence before it, rooted in Defendant's failure to engage in discovery or to appear for the damages hearing. Moreover, given Defendant's apparently defunct status (see n.1), there is little need for the court to further explore whether the judgment amount is truly excessive or otherwise unjust. Also, as indicated, Plaintiff has not sought multiple or enhanced damages based on either the trademark infringement or the other claims against Defendant, even though that too would be authorized under Section 35(a).

The court also finds, given the totality of the circumstances, that this is an "exceptional case" warranting an award of attorney's fees under Section 35(a) or, at the very least, a compelling case for awarding attorney's fees under Mass. Gen. L. chapter 93A. *See Dialogo, LLC v. Bauza*, 549 F. Supp. 2d 131, 138 (D. Mass. 2008) (Ponsor, J.) (awarding full attorneys' fees under chapter 93A, but not under Section 35(a),

5

against defendant who was absent from damages trial).  As Plaintiff points out, Defendant's own contract with USA Rugby (Def.'s Motion to Dismiss, Ex.3) acknowledges Plaintiff's preexisting right and thus fairly establishes the willfulness of Defendant's actions.  *See Medline Indus., Inc. v. 9121-3140 Quebec, Inc.*, 2010 WL 840196, at *7 (D.N.H. Mar. 5, 2010) (awarding lost profits enhanced by fifty percent and counsel fees against defaulted defendant as exceptional case established by allegations of complaint).  In light of Plaintiff's counsel's affidavit, moreover, the court believes that the $24,600 is reasonable and appropriate.

III. CONCLUSION

For the reasons stated, the court recommends that Plaintiff be awarded $23 million in damages plus $ 24,600 in attorney's fees.[3]

DATED: February 17, 2011

/s/   Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

---

[3]  The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.