```
                    United States District Court
                     District of Massachusetts
_____
                                )
RUGGERS, INC. d/b/a/ KOOGA NORTH)
AMERICA,                        )
          Plaintiff,            )
                                )   Civil Action No.
          v.                    )   09-30051-NMG
                                )
UNITED STATES OF AMERICA RUGBY  )
FOOTBALL UNION, LTD. d/b/a USA  )
RUGBY, CANTERBURY OF NEW        )
ZEALAND-UNITED STATES, UNDER    )
ARMOUR, INC., CROSSBAR ATHLETIC )
WEAR, RUGBY IMPORTS, LTD, XP    )
APPAREL, LLC,                   )
          Defendants.           )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Ruggers, Inc., d/b/a KooGa North America ("KooGa") alleges that defendant United States of America Rugby Football Union, Ltd. ("USA Rugby") willfully violated the terms of an exclusive sponsorship agreement between the parties. Plaintiff sues for breach of contract, misrepresentation, violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A ("Chapter 93A") and unjust enrichment.[1] Before the Court is defendant's motion for summary judgment.

---

[1] On August 5, 2011, this Court, pursuant to the parties' stipulation, dismissed with prejudice plaintiff's claims against defendant for false advertising or sponsorship, misappropriation of publicity and violation of M.G.L. c. 214, § 3A.

## I. Background

In early 2004, KooGa, a vendor of rugby clothing and gear, discussed with USA Rugby, a non-profit organization that promotes the sport of rugby in the United States, a proposed agreement by which KooGa would become the exclusive provider of "rugby kits" to the various national rugby teams that USA Rugby organizes and sponsors. A rugby kit consists basically of the rugby uniform (jersey, shorts and socks) that the players wear on the field. In exchange, KooGa was to obtain the right to use the USA Rugby trademark on its replica clothing and products and to identify itself as the exclusive kit supplier to USA Rugby's national teams.

In late March, 2004, the "essential terms" of the agreement were memorialized in a letter to KooGa from USA Rugby ("the 2004 letter agreement") which was signed by Vic Thomas, the president of KooGa. Specifically, the agreement states that it is "intended to reflect the essential terms of the agreement" but that the parties would negotiate and execute a long-form contract within 30 days. Nothing on the face of that writing provided KooGa with any exclusive rights.

A draft of a more complete contract ("the 2004 draft contract") was created in May, 2004 and included exclusivity provisions. That document was never signed and contains redline edits and various handwritten notes by an unknown scrivener in

the margin.  By its terms, the purported contract was set to expire in May, 2008.  Finally, on June 1, 2007, the parties executed a contract ("the 2007 contract") with substantially the same terms as the 2004 draft contract.

Defendant contends that the 2004 letter agreement was controlling of the parties' relationship until the 2007 contract was executed.  Plaintiff agrees that the 2004 letter agreement set forth the essential terms of the parties' agreement but disputes that it contained all the terms that were agreed upon.  Instead, plaintiff asserts that the 2004 draft contract reflected the parties' full understanding and was controlling until it was "supplemented" by the 2007 contract.

In any event, from May, 2004 through May, 2008, USA Rugby players wore KooGa's rugby kits in nationally and internationally attended and televised events and appearances.  In exchange, KooGa supplied USA Rugby each year with rugby gear, clothing and other merchandise with a total retail value of $350,000.  The wholesale cost to KooGa of the goods supplied was $175,000 per year (or a total of $700,000).  KooGa also, on occasion, would deliver additional gear requested by USA Rugby and would invoice those shipments on a separate account.  KooGa used the USA Rugby logo on its products and paid USA Rugby a 10% "royalty" on the retail value of all goods sold with that logo.  KooGa established an online store to sell USA Rugby merchandise and USA Rugby

provided a link to that store on its official website.

Plaintiff contends that until mid-2006, defendant substantially complied with its understanding of the parties' contract but thereafter breached it by 1) allowing the USA Rugby logo to be used on competing products, 2) allowing USA Rugby teams to wear and promote competitors' clothing and 3) selling and promoting competitors' brands, including through the USA Rugby website.

## II. Procedural History

In March, 2009, KooGa filed a complaint against USA Rugby for willful violation of the terms of the parties' exclusive sponsorship agreement.  Plaintiff amended its complaint in August, 2009 to add claims against a number of plaintiff's competitors, including Canterbury of New Zealand/United States ("Canterbury"), Crossbar Athletic Wear ("Crossbar"), Under Armour, Inc. ("Under Armour") and XP Apparel, LLC ("XP"), all of which allegedly induced USA Rugby to violate the terms of its agreement with plaintiff.

In September, 2010, United States District Judge Michael A. Ponsor allowed Under Armour's motion to dismiss and, in December, 2010, allowed plaintiff's motion for default judgment against XP. In April, 2011, Judge Ponsor accepted and adopted the Report and Recommendation of Magistrate Judge Kenneth P. Neiman that $23 million in damages plus $24,600 in attorney's fees be awarded in

favor of plaintiff against XP.

In August, 2011, the case was reassigned to this Session. Shortly thereafter, the Court, pursuant to the parties' stipulation, dismissed three of the counts stated against USA Rugby and dismissed Rugby Imports, Ltd. as a defendant.

In September, 2011, USA Rugby filed a motion for summary judgment as to plaintiff's remaining claims, which is opposed. A jury trial is currently scheduled to proceed in this Session on March 19, 2012.

### III. <u>Analysis</u>

**A.   Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> A genuine issue of material fact exists where the evidence with respect to the

material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

### B.   Application

#### 1.   Breach of Contract

To prove a breach of contract, plaintiff must show that: 1) there existed of a valid and binding contract, 2) the defendant breached the terms of the contract and 3) the plaintiff has suffered damages from the breach. Pizzeria Uno Corp. v. Pizza by Pubs, Inc., 2011 WL 4020845, at *3 (D. Mass. 2011). Defendant argues that, even if KooGa had exclusive rights during all four years of the parties' business relationship, its allegations do not amount to a breach of contract and its damages claims are not compensable as a matter of law.

a. <u>Exclusive rights</u>

Defendant argues, in passing, that plaintiff cannot claim any exclusive rights for the first three years of the parties' relationship because the 2004 letter agreement was controlling during that period. That instrument, however, explicitly refers to the parties' intent to execute a long-form agreement within 30 days, which period expired at roughly the time the 2004 draft contract was created. Although the draft contract was never executed, defendant's conduct (compliance with the exclusivity portion of the draft contract for approximately two years) is some evidence that it was controlling. Correspondence between the parties also supports that inference. For example, an email sent in January, 2007 by John Broker, the National Teams Administrator for USA Rugby, to all the national team managers states:

> Please be advised that effective immediately, no kit may be purchased for National Team activities through a vendor other than KooGa, with whom USARUGBY is contracted for National Team kit.... KooGa is and has been our contracted National Teams kit sponsor.

Plaintiffs contend Mr. Broker's email accurately reflected the parties' intent and understanding of their then-existing agreement. Viewing the record in a light most favorable to the non-moving party, as the Court must on a motion for summary judgment, the Court finds that there is a genuine issue of material fact as to whether the 2004 letter agreement or the 2004

draft contract was controlling during the first three years of the parties' business relationship.

        b.    <u>Breach</u>

Defendant contends that none of plaintiff's allegations amounts to a breach of contract and thus summary judgment should be entered in its favor. The Court disagrees. For example, the 2004 draft contract provides that, for the duration of the agreement period, USA Rugby "will not display links or information regarding organizations or companies offering competitive products on the USA Rugby Web Page" or "knowingly suffer or permit the use by others of the Badge on Competitive Products."[2]

The record shows, however, that USA Rugby sent an email in December, 2006 announcing it had signed an official licensing agreement with XP. The announcement states in part that

> XP will ... host, maintain and provide product fulfillment for one of USA Rugby's online stores.... The new online store, which went live on Dec. 13, will feature the USA Rugby licensed apparel product line, to include T-shirts, sweatshirts, caps, polo shirts, youth and infant wear, with additional products to be added on an ongoing basis.

The email then provides a link to the "new USA Rugby/XP online store." Although USA Rugby contends that XP did not sell

---

[2] In the 2004 draft contract, "Competitive Products" are defined as any "game or practice outer clothing" that "may compete with the Approved Products." The 2007 contract defines "Competitive Products" as any product "worn for the same purpose as the approved products."

competing products, what it sold or did not sell presents a disputed issue of fact for the jury to decide.

Based on such evidence, the Court concludes that a reasonable jury could find USA Rugby liable for breach of contract.

            c.    <u>Damages</u>

In its interrogatories, defendant inquires about damages sought by plaintiff in this case. Plaintiff responds that its damages consist of 1) reliance damages equal to the value of the goods KooGa provided to USA Rugby without charge over the course of four years (approximately $700K) and 2) the total due on allegedly unpaid invoices (approximately $200K) for other gear provided to USA Rugby. Defendant contends that those alleged damages are not compensable as a matter of law.

Generally, in a breach of contract action, damages are based on the injured party's "expectation interest" and are intended to place him in the same position he would have been in had the contract been performed. <u>Restatement (Second) of Contracts</u>, § 347 cmt. (a) (1981). Alternatively, however, damages may be based on an injured party's "reliance interest", that is, expenditures he has made in reliance upon a contractual obligation that was not performed. <u>See</u> <u>id.</u> § 349; <u>Schaumberg</u> v. <u>Friedmann</u>, 72 Mass. App. Ct. 52, 57 (2008). Reliance damages are designed to place an injured party the same position he would

have been in had he never entered the contract.  VMark Software, Inc. v. EMC Corp., 37 Mass. App. Ct. 610, 612 (1994).  This form of recovery is often appropriate where "the party's damages based on lost expectations are uncertain or cannot be measured." Brennan v. Carvel Corp., 929 F.2d 801, 811 (1st Cir. 1991). Recovery "may be reduced to the extent that the breaching party can prove that a deduction is appropriate for any benefit received by the claimant for salvage or otherwise."  DPJ Co. Ltd. P'ship v. F.D.I.C., 30 F.3d 247, 250 (1st Cir. 1994) (internal quotation omitted).

Defendants contend that plaintiffs' claim for "reliance" damages is really a claim for rescission insofar as plaintiff demands that it be reimbursed for the value of everything it provided to USA Rugby for the duration of the parties' business relationship.  Indeed, plaintiff cannot, as a matter of law, pursue a remedy of rescission because USA Rugby has committed, at most, only a partial breach.  See Restatement (Second) Contracts § 373 ("[I]f breach is by non-performance, restitution is available only if the breach gives rise to a claim for damages for total breach and not merely to a claim for damages for partial breach.").  Nor may plaintiff pursue a claim for expectation damages where it has proffered no evidence of lost profits.  See Brennan, 929 F.2d at 811.

Nonetheless, if a jury determines that USA Rugby is liable

for breach of the parties' agreement, there are sufficient facts in the record from which it could award KooGa damages based on its reliance interest. In all likelihood, KooGa will be able to recover only a portion of the amount it seeks because defendant appears able to present evidence of benefits it conferred upon plaintiff during the disputed time period. The burden of presenting such evidence is, however, upon the defendant.

With respect to the allegedly unpaid invoices, the parties have diametrically opposed views of what amounts were or were not paid. That dispute cannot be resolved on the pleadings.

Accordingly, defendant's motion for summary judgment will be denied with respect to plaintiff's claim for breach of contract.

### 2. Misrepresentation

To prevail on a claim for either intentional or negligent misrepresentation under Massachusetts law, a plaintiff must prove 1) the defendant made a false statement of a material fact, 2) to induce the plaintiff to act thereon and 3) the plaintiff reasonably relied on the statement to his detriment. Zimmerman v. Kent, 575 N.E.2d 70 (Mass. App. Ct. 1991). For an intentional misrepresentation claim, the defendant must know that his statement was false. Int'l Floor Crafts, Inc. v. Adams, 477 F. Supp. 2d 336, 341 (D. Mass. 2007). For a negligent misrepresentation claim, the defendant must have made a false statement without reasonable basis for believing it to be true.

Cummings v. HPG Intern., Inc., 244 F.3d 16, 24 (1st Cir. 2001).

Plaintiff's misrepresentation claim is based on allegations that USA Rugby falsely and repeatedly misrepresented its intention to resolve disputes over performance of the parties' agreement.[3] Plaintiff does not specify whether its claim is for negligent or intentional misrepresentation but the Court concludes that plaintiff's claim fails under either theory because the record does not support a finding that plaintiff reasonably relied on any of the alleged misrepresentations to its detriment.

Summary judgment is appropriate on a misrepresentation claim if no reasonable jury could find the party's reliance reasonable and justifiable. See Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 467–68 (2003); see also Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc., 62 F. Supp. 2d 236, 242 n.3 (D. Mass. 1999) ("Under Massachusetts law, reliance is an element of claims for fraud and for negligent misrepresentation."). Although the reasonableness of reliance is usually a question for the jury, it "can be a question of law where the undisputed facts permit only one conclusion." See Fox v. F&J Gattozzi Corp., 41 Mass. App. Ct. 581, 587–88 (1996).

To the extent that plaintiff's misrepresentation claims

---

[3] The Court will not consider KooGa's new allegation that USA Rugby falsely induced KooGa to enter the initial agreement because that allegation was not pled in the complaint.

depend on USA Rugby's alleged promises to cure instances of nonperformance, the Court concludes that no reasonable fact-finder could find KooGa's reliance reasonable.  Even viewing the record in the light most favorable to the plaintiff, those representations could, at most, be understood as statements about actions that might take place in the future.  False statements of "conditions to exist in the future" or "promises to perform an act" do not support a claim for misrepresentation "unless the promisor had no intention to perform the promise at the time it was made." Cumis Ins. Society, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 474 (2009).  Plaintiff has offered no evidence that any particular promisor spoke without intending his promise to be fulfilled.

Similarly, plaintiff's alleged reliance on an email from USA Rugby in December, 2006 concerning the XP/USA Rugby licensing agreement was not reasonable.  When Vic Thomas received USA Rugby's announcement of its official licensing agreement with XP, he asked why the agreement had not been discussed with him.  A representative from USA Rugby responded:

> [T]his is the event T-shirts and crap we will sell at the events – they will host a store to sell what's left over and will carry NO High Performance - no Team Kit[.]  Your website/Store remains as the Official KooGa site ... this will NOT affect your business and if you want to put some stuff on your site we can do that too[.]

That email seems to encapsulate USA Rugby's opinion that its merchandising activities with XP did not violate the terms of its

agreement with KooGa. False statements of opinion or belief generally are not actionable. Elias Bros. Rests., Inc. v. Acorn Enters., Inc., 831 F. Supp. 920, 926 (D. Mass. 1993). Although under certain circumstances such statements may be actionable where the speaker knows such statement is false when it is made, Doe v. Cultural Care, Inc., Civ. No. 10-11426, 2011 WL 4738558, at *8 (D. Mass. 2011), plaintiff has offered no evidence that is the case here.

Furthermore, the recipient of a misrepresentation is not justified in relying on it if a mere cursory glance would have disclosed the falsity of statement or if the recipient "closes its eyes and passively accepts the contradictions that exist in the information available to it." Mass. Laborers' Health & Welfare Fund, 62 F. Supp. 2d at 242; Trifiro v. N.Y. Life Ins. Co., 845 F.2d 30, 34 (1st Cir. 1988) ("Explicit conflict engenders doubt, and to rely on a statement the veracity of which one should doubt is unreasonable."); Restatement (Second) of Torts §§ 540-41 (1977). Here, USA Rugby's statement that XP would only produce event-specific "t-shirts and crap" conflicted with the wider array of products the announcement stated XP would produce. Plaintiff could simply have visited the link to the USA Rugby/XP website included within the announcement to see that the XP website was linked to the official USA Rugby website and ascertain the scope of inventory offered on the XP online store.

Finally, KooGa has failed to show that it relied to its detriment upon any of the alleged misrepresentations. It states generally that USA Rugby's promises to cure induced it to continue to perform on the contract but it has offered no evidence that, absent any such representations, it would have opted not to perform. To the contrary, the record shows that throughout the parties' contractual relationship, KooGa attempted to convince USA Rugby to enlarge the relationship. KooGa's conclusory statement of reliance is thus contrary to the evidence and insufficient to defeat summary judgment. See Rodi v. S. New England Sch. of Law, 532 F.3d 11, 16 (1st Cir. 2008).

In sum, because KooGa has not shown reasonable or detrimental reliance, defendant's motion for summary judgment will be allowed with respect to plaintiff's misrepresentation claim.

### 3.    Chapter 93A

Plaintiff's claim under Chapter 93A arises entirely out of its misrepresentation claim: it contends that USA Rugby acted unfairly and deceptively by falsely promising it would cure instances of misconduct in order to induce KooGa to continue to perform on the contract. Because, as discussed above, plaintiff cannot demonstrate reasonable reliance, its Chapter 93A claim fails as a matter of law. See Trifiro, 845 F.2d at 33 & n.1 ("[A] violation of [Chapter] 93A require[s] reasonable reliance

by the petitioner."); see also Rodi, 532 F.3d at 18-19 (holding that plaintiff could not recover under Chapter 93A for claim based on misrepresentation where plaintiff failed to prove reasonable reliance on false statements); Mass. Laborers' Health & Welfare Fund, 62 F. Supp. 2d at 243 (same).

Accordingly, defendant's motion for summary judgment will be allowed with respect to plaintiff's Chapter 93A claim.

### 4. Unjust Enrichment

Unjust enrichment is an equitable cause of action which is available to plaintiffs who lack adequate remedies at law. Ruiz v. Bally Total Fitness Holding Corp., 447 F. Supp. 2d 23, 29 (D. Mass. 2006 ). A claim for unjust enrichment requires proof that the defendant was enriched to the plaintiff's detriment without justification or an adequate legal remedy. Id.

Because the Court has concluded that plaintiff's claim for breach of contract is viable, its claim for unjust enrichment fails. An "equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law." Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005). Whether the contract claim is ultimately successful is irrelevant; its "mere availability is a bar to a claim of unjust enrichment." Fernandes v. Havkin, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) (availability of negligence and Chapter 93A claims barred claim for unjust enrichment); see also Adrion v. Knight, No. 07-11277,

2009 WL 3152885, at *1 n.1 (D. Mass. Sept. 28, 2009) ("[T]he availability of an adequate remedy at law (whether successful or not) precludes an equitable claim of unjust enrichment")).

Accordingly, defendant's motion for summary judgment will be allowed with respect to plaintiff's claim for unjust enrichment.

### ORDER

In accordance with the foregoing, defendant's motion for summary judgment (Docket No. 90) is, with respect to plaintiff's claim for misrepresentation, violation of Chapter 93A and unjust enrichment, **ALLOWED**, but is, with respect to plaintiff's claim for breach of contract, **DENIED**.

**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge

Dated January 30, 2012